1  XAVIER BECERRA
   Attorney General of California
2  MARK R. BECKINGTON
   Supervising Deputy Attorney General
3  TODD GRABARSKY
   Deputy Attorney General
4  State Bar No. 286999
     300 South Spring Street, Suite 1702
5    Los Angeles, CA  90013
     Telephone:  (213) 269-6044
6    Fax:  (213) 897-7604
     E-mail:  Todd.Grabarsky@doj.ca.gov
7  *Attorneys for Defendant Xavier Becerra*

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11

12 | **WILLIAM A. MASTERS,** | 2:19-cv-02030-MWF-AGR |
   |---|---|
13 | Plaintiff, | **DEFENDANT'S REPLY IN** |
   | | **SUPPORT OF MOTION TO** |
14 | v. | **DISMISS PLAINTIFF'S FIRST** |
   | | **AMENDED COMPLAINT** |
15 | **XAVIER BECERRA,** | |
   | | Date:        Monday, June 17, 2019 |
16 | Defendant | Time:        10:00 a.m. |
   | | Courtroom:  5A |
17 | | Judge:       The Honorable Michael |
   | | W. Fitzgerald |
18 | | Trial Date:  None set |
   | | Action Filed: March 19, 2019 |
19 | | |

20                              **INTRODUCTION**

21        Plaintiff challenges California laws that impose temporary, reasonable firearm

22 restrictions on individuals who present a danger to public safety as a result of

23 mental health concerns. As detailed in Defendant's Motion to Dismiss, those

24 mental-health related firearm restrictions do not run afoul of the Second

25 Amendment, which does not afford a right to possess firearms by the mentally ill or

26 those whose mental health conditions pose a danger to public safety. Nor do the

27 restrictions violate due process; they provide adequate procedural protections by

28 which persons subject to the restrictions may challenge them.

Rather than addressing Defendant's arguments directly, Plaintiff's Opposition seeks to assert new allegations not present in the First Amended Complaint. Nevertheless, those allegations fail to demonstrate a violation of Plaintiff's Second Amendment rights or that he was not afforded adequate due process. As asserted in the operative First Amended Complaint, Plaintiff received a five-year firearm prohibition pursuant to the statutory restriction that applies to individuals who communicate a serious and identifiable threat of violence during the course of mental health treatment, and two firearms were confiscated from him for that reason. And, Plaintiff does not adequately allege that he was unduly thwarted from initiating firearm restoration proceedings or did not receive any process that was due. Additionally, Plaintiff fails to adequately address the threshold deficiencies of the First Amended Complaint based on standing, the Eleventh Amendment immunity, or the *Rooker-Feldman* doctrine.

Accordingly, Plaintiff's Opposition fails to rebut the arguments asserted in Defendant's Motion to Dismiss, which should be granted by the Court.

## ARGUMENT

**I.  PLAINTIFF HAS NOT ESTABLISHED STANDING TO CHALLENGE THE FIREARM RESTRICTIONS THAT DO NOT APPLY TO HIM.**

Plaintiff fails to demonstrate that he has standing to challenge each of the statutes at issue in the First Amended Complaint. Standing under Article III requires that there exists a case or controversy with (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560 (some internal question marks omitted).

As explained in the Motion to Dismiss (5-6), the First Amended Complaint only alleges that Plaintiff was subject to two of the firearm restrictions he challenges in this lawsuit. Plaintiff only alleges that a five-year restriction was imposed upon him pursuant to section 8100(b)(1) of California's Welfare and Institutions Code (making an identifiable threat of violence during the course of psychological treatment), and that his firearms were confiscated presumably pursuant to section 8102. (See First Am. Compl. ¶ 31 & Ex. A.) The operative pleading contains no allegation that Plaintiff has been—or will imminently be—subject to the firearm restrictions under sections 8100(a), 8103(f), or 8103(g), which are related to a person's involuntary detention or commitment for mental health reasons.

Instead of addressing these standing deficiencies, Plaintiff appears to assert new allegations in his Opposition that are not present in the First Amended Complaint. For example, Plaintiff implies—for the first time—that he was detained for seventy-two hours for mental health evaluation pursuant to Welfare and Institutions Code section 5150, and, as such, may have been subject to the other firearm restrictions. (*See* Opp'n 9.) However, because these allegations are raised for the first time in the Opposition and are not found in the operative pleading, the Court may not consider them in ruling on the Motion to Dismiss. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Plaintiff also asserts that "if the Court holds that the language of [section] 8102(b)(l) is unconstitutional then so to [*sic*] is the identical language in the other sections objected to by the State of California." (Opp'n 3.) But Plaintiff provides no authority for that proposition, which stands in direct contrast to the standing

1  requirement that a cognizable injury be concrete, particularized and actual or

2  imminent. *Lujan*, 504 U.S. at 560.

3      Accordingly, Plaintiff has failed to demonstrate that he has standing to

4  challenge sections 8100(a), 8103(f), or 8103(g).

5  **II.   SOVEREIGN IMMUNITY BARS PLAINTIFF'S SUIT.**

6      The Eleventh Amendment poses a total bar to Plaintiff's suit. Specifically, in

7  order for the exception to sovereign immunity recognized in *Ex parte Young*, 209

8  U.S. 123 (1908), to apply, the state officer must have "fairly direct" connection

9  with the enforcement of the allegedly unconstitutional statute. *L.A. Cty. Bar Ass'n*

10  *v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). "[A] generalized duty to enforce state law

11  or general supervisory power over the persons responsible for enforcing the

12  challenged provision will not subject an official to suit." *Id.* As discussed in the

13  Motion to Dismiss (6-7), the First Amended Complaint is devoid of the particular

14  role Attorney General Becerra—the sole defendant in this lawsuit—plays in the

15  enforcement of the statutes at issue as they pertain to Plaintiff.

16      In response, Plaintiff only points to the February 24, 2018 letter from the

17  Department of Justice Bureau of Firearms notifying him of the five-year firearm

18  restriction under section 8100(b)(1). (Opp'n 5.) But that letter and the remainder of

19  the First Amended Complaint fail to point to Attorney General Becerra's particular

20  role in enforcing the statute at issue beyond a "'general duty to enforce California

21  law.'" *Bolbol v. Brown*, 120 F. Supp. 3d 1010, 1018 (N.D. Cal. 2015) (quoting

22  *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943

23  (9th Cir. 2013)). Without demonstrating that "fairly direct" enforcement

24  connection, Plaintiff has not nor cannot show that the *Ex parte Young* exception to

25  Eleventh Amendment sovereign immunity applies in this case. *L.A. Cty. Bar Ass'n*,

26  979 F.2d at 704.

27      Accordingly, Plaintiff's suit is barred by sovereign immunity under the

28  Eleventh Amendment.

**III.   THE *ROOKER-FELDMAN* DOCTRINE BARS PLAINTIFF'S SUIT.**

The *Rooker-Feldman* doctrine bars lawsuits that challenge the state superior court's rulings: "The purpose of the [*Rooker-Feldman*] doctrine is to protect state judgments from collateral federal attack. Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence called upon to review the state court decision.'" *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (quoting *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983)). The laws at issue in this case provide detailed procedures governing the ways persons may challenge the firearm prohibitions imposed on them via petition to superior court. *See* Cal. Welf. & Inst. Code §§ 8100(b), 8102(b), 8103(f). During those petition hearings, the government has the burden of proving, by a preponderance of the evidence, that the person is not able to use the firearms in a safe and lawful manner. *See id.* §§ 8100(b)(3)(B), 8102(c)-(h), 8103(f)(6). Accordingly, if Plaintiff has challenged the firearm restrictions imposed upon him in superior court, the present suit would be barred by the *Rooker-Feldman* doctrine because it would be "inextricably intertwined" with the superior court proceedings. *See Fontana Empire Center, LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002).

The First Amended Complaint does not indicate whether Plaintiff challenged his firearm restrictions in superior court. Nor does it allege that Plaintiff attempted to follow the procedures governing the proceedings to challenge firearms restrictions via that procedures outlined in sections 8100(b), 8102(b), 8103(f), but was improperly prevented or thwarted from doing so. Rather, Plaintiff asserts, for the first time in the Opposition, that "he DID NOT get a Due process Hearing!" (Opp'n 7.) The Court should discount this assertion because it has been brought outside the pleading for the first time. *See Schneider*, 151 F.3d at 1197 n.1. And, Plaintiff does not state—either in the First Amended Complaint or the Opposition—whether he in fact initiated a firearm restoration proceeding. Rather, it

5

1  could be the case that he simply sought to bypass those procedures and brought the

2  present suit instead. If so, the present lawsuit would represent an attempt to

3  circumvent to those procedures as well as the *Rooker-Feldman* doctrine.

4      Accordingly, Plaintiff fails to demonstrate that the *Rooker-Feldman* doctrine

5  does not bar his lawsuit.

6  **IV.  PLAINTIFF HAS FAILED TO DEMONSTRATE A SECOND AMENDMENT**

7  **VIOLATION.**

8      Plaintiff also fails to rebut Defendant's arguments that the First Amended

9  Complaint's fails to state a cognizable Second Amendment Claim. As explained in

10  detail in the Motion to Dismiss (9-16), the firearm restrictions Plaintiff challenges

11  in this lawsuit—on their own and as applied to Plaintiff—do not fall under the

12  scope of the Second Amendment; the possession of firearms by those who pose a

13  danger to public safety due to their mental health conditions is not historically

14  understood to be protected by the right to bear arms. According to the First

15  Amended Complaint, Plaintiff's firearms were confiscated because he made a

16  serious, identifiable threat of violence during the course of psychological treatment

17  (First Am. Compl. Ex. A.); and, according to the Opposition, Plaintiff now implies

18  that he was detained for seventy-two hours as a danger to himself or others pursuant

19  to section 5150 (Opp'n 9). Thus, the allegations fall squarely within the statutes

20  authorizing authorities to restrict possession of firearms by persons deemed to pose

21  a danger to public safety as the result of a mental health condition. Such

22  application does not infringe upon the Second Amendment as historically

23  understood. (*See* Mot. to Dismiss 10-16.). And, in any event, the mental-health

24  related firearm restrictions satisfy intermediate scrutiny because they are

25  substantially related to and reasonably fit their important objectives, namely,

26  protecting the public from firearm use by those who present a danger to themselves

27  or others due to their mental health condition. (*See* Mot. to Dismiss 16-20.)

28

1   Instead of addressing the Second Amendment analysis directly, Plaintiff

2   asserts that he is not mentally ill. (Opp'n 9-10.) In support of that notion, Plaintiff

3   alleges for the first time in his Opposition that he was detained for three days

4   College Hospital in Cerritos, California, and evaluated by a "Dr. Wronski" or

5   "Wronsky," who "game [*sic*] me a clean bill of health and released me[,] [s]tating

6   that he thought the incident was a 'misunderstanding.'" (*Id.* at 9.) Those assertions,

7   however, are insufficient to demonstrate a Second Amendment violation for several

8   reasons.

9   First, the Court may not consider allegations about Plaintiff's mental health

10  evaluation and detention because they were raised for the first time in the

11  Opposition, and not in the operative pleading. *See Schneider*, 151 F.3d at 1197 n.1.

12  The First Amended Complaint only contains allegations and exhibits that Plaintiff's

13  firearms were confiscated because he made an identifiable threat of violence during

14  the course of psychological treatment. There are no allegations that Plaintiff was

15  determined by anyone to be able to own and operate a firearm in a safe and lawful

16  manner.

17  Second, the statutes at issue do not restrict firearms from *all* persons with

18  mental illnesses or disturbances, but only those who have been detained as a danger

19  to themselves and others (sections 8100(a) and 8103) or who make a serious and

20  identifiable threat during the course of mental health treatment (section 8100(b)).

21  As explained, possession of firearms by those who pose a danger to public safety

22  due to their mental health conditions has not traditionally been protected by the

23  Second Amendment. (*See* Mot. to Dismiss 10-16.)

24  And third, even if the Second Amendment were applicable here, the mental-

25  health firearm restrictions satisfy the requisite level of scrutiny because they are a

26  "reasonable fit" to achieving the important governmental interest of ensuring that

27  public safety is not threatened by the possession of firearms by those whose mental

28  health conditions make them a threat to themselves or others. The statutory

1   framework of these provisions thus ensures that only those whose mental health

2   poses a danger to public safety will be subject to the firearm restrictions. As

3   explained, non-dangerous persons can lift the restrictions by petition to the superior

4   court, in which the government has the burden to prove that the person is not likely

5   to use firearms in a safe and lawful manner. *See* Cal. Welf. & Inst. Code §§ 8103(f),

6   8100(b), 8102(b). Plaintiff has made no allegation or showing that he sought to

7   initiate such firearm restoration proceedings pursuant to the statutory framework,

8   yet was improperly thwarted from those efforts.

9        Therefore, Plaintiff has failed to show that the firearm restrictions violate the

10   Second Amendment.

11   **V.   PLAINTIFF HAS FAILED TO DEMONSTRATE A DUE PROCESS VIOLATION.**

12        Finally, Plaintiff fails to establish that he has stated a due process claim. As

13   explained in the Motion to Dismiss (20-22), the firearm restrictions lay out in detail

14   the notice requirements and the procedures by which Plaintiff can challenge both

15   the imposition of the five-year prohibition and the confiscation of his firearms

16   before a superior court. Cal. Welf. & Inst. Code §§ 8103(f), 8100(b), 8102(b). In

17   each of these provisions, the person subject to the firearm ban bears no burden;

18   rather, it is the government's burden to demonstrate, by preponderance of the

19   evidence, that the person would not be likely to use firearms in a safe and lawful

20   manner. *See id.* §§ 8100(b)(3)(B), 8102(c)-(h), 8103(f)(6). Plaintiff makes no

21   argument that these procedures are deficient, that he was deprived of them in any

22   way, or that he was improperly thwarted from pursuing a firearm restoration

23   petition. Plaintiff only asserts that he "got no hearing at all" (Opp'n 12), yet he does

24   not allege in the First Amended Complaint whether he attempted to initiate a

25   firearm restoration petition through the prescribed procedures.

26        Instead, Plaintiff only argues that these procedures violate due process because

27   they occur only *after* firearms are confiscated and the restrictions are imposed. In

28   support of this argument he relies solely on the fifty-year-old *Armstrong v. Manzo*,

380 U.S. 545 (1965), which dealt with due process in adoption/custody proceedings, and not the critical public safety concerns of firearm restrictions and restoration hearings. In *Armstrong*, a divorced father was not notified that his ex-wife and her new husband were initiating adoption proceedings, which resulted in the new husband becoming the legal father over the child of ex-wife and the divorced father. *Id.* at 546-47. Once the divorced father found out, the court sought to remedy the lack of notice of the original proceeding by initiating subsequent adoption proceedings; however, in the new proceedings, the court imposed a burden by which the divorced father would have to show that he had not failed to contribute to child support—a burden which not have been imposed had he been given notice of the original adoption proceedings. *Id.* The Court held that the notice failure violated due process and that violation was not cured by the subsequent adoption proceedings which unfairly shifted the burden of proof onto the divorced father. *Id.* at 550-52.

Here, the mental-health related firearm restrictions clearly concern issues of public safety that were not present in *Armstrong*, as they seek to protect the public from firearm use by persons who pose a danger to themselves or others due to their mental health conditions. Since *Armstrong*, the Supreme Court "has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Indeed, protection of public health and safety—as the mental-health related firearm restrictions seek to do—is a "paramount governmental interest which justifies summary administrative action." *Hodel v. Va. Surface Min. & Reclamation Ass'n*, 452 U.S. 264, 300 (1981). The revocation of the ability of individuals who had been deemed a danger to themselves or others to own, possess, or purchase a firearm without a predeprivation is undoubtedly justified as to public health and safety. *See Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010) ("[The state] clearly

9

1   has a strong and compelling interest in ensuring that firearm permits are not issued
2   to those lacking the essential character or temperament necessary to be entrusted
3   with a weapon." (internal quotation marks omitted)); *Hightower v. City of Boston*,
4   693 F.3d 61, 85 (1st Cir. 2012) (discussing cases); *City of San Diego v. Boggess*,
5   216 Cal. App. 4th 1494, 1500 (2013) ("Keeping a firearm away from a mentally
6   unstable person is a reasonable exercise of the police power. It is not unreasonable
7   to conclude there is a significant risk that a mentally unstable gun owner will harm
8   himself or others with the weapon." (internal quotation marks omitted)).

9       Moreover, the burden-shifting concern of *Armstrong*, whereby the burden of
10  proof was imposed onto the divorced father in the postdeprivation hearing, is not
11  present in this case. As explained, at the postdeprivation firearm restoration
12  hearings, the person subject to the firearm restrictions bears no burden; rather, it the
13  *government* must demonstrate that the person would not be likely to use firearms in
14  a safe and lawful manner. Cal. Welf. & Inst. Code §§ 8100(b)(3)(B), 8102(c)-(h),
15  8103(f)(6). Thus, if Plaintiff sought to challenge his firearm confiscation or ban
16  through the proscribed procedures, he would bear no burden of proof, in comport
17  with due process.

18      Accordingly, Plaintiff has failed to demonstrate a due process violation.

19  **CONCLUSION**

20      For the foregoing reasons, and those articulated in Defendant's Motion to
21  Dismiss, the Court should dismiss Plaintiff's First Amended Complaint.

22  //
23  //
24  //
25  //
26  //
27  //
28  //

10

1

2

Dated:  June 3, 2019

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General


*/s/ Todd Grabarsky*
TODD GRABARSKY
Deputy Attorney General
*Attorneys for Defendant Xavier Becerra*

SA2019101539

11

# CERTIFICATE OF SERVICE

Case Name:   **Masters, William v. Xavier Becerra**            No.   **2:19-cv-02030-MWF-AGR**

I hereby certify that on <u>June 3, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>June 3, 2019</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

William A. Masters, II
18929 Vanowen Street
Reseda, CA 91335

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>June 3, 2019</u>, at Los Angeles, California.

Cecilia Apodaca
Declarant

*Cecilia Apodaca*
Signature

SA2019101539
53466363.docx